# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

|  |  |
|---|---|
| DANA REEVES, on behalf of herself and others similarly situated, | :   **Civil Action No.: 5:20-cv-11034-JEL-DRG** |
| Plaintiff, | : |
| v. | : |
| PATENAUDE & FELIX, A.P.C., | : |
| Defendant. | : |

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to Fed. R. Civ. P. 23, Dana Reeves ("Plaintiff") respectfully moves this Court to certify the settlement class and grant preliminary approval of her class action settlement with Patenaude & Felix, A.P.C. ("Defendant"). Defendant does not oppose this relief.

### Brief Statement of the Issues Presented

1. Whether the Court should preliminarily certify the settlement class?

2. Whether the Court should preliminarily approve the class action settlement and direct notice to be disseminated to class members?

1

## Brief List of Controlling Authorities

*In re Whirlpool Corp. Front–Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012)

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

*Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006)

*Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620 (6th Cir. 2005)

Fed. R. Civ. P. 23

Dated: November 17, 2020

/s/ James L. Davidson
James L. Davidson
Greenwald Davidson Radbil PLLC
7601 N. Federal Highway, Suite A-230
Boca Raton, FL 33487
Tel: (561) 826-5477
jdavidson@gdrlawfirm.com

Counsel for Plaintiff and the proposed class

Ronald S. Weiss, Attorney & Counselor
7035 Orchard Lake Road, Suite 600
West Bloomfield, MI 48322
Phone: 248-737-8000 Fax: 248-737-8003
Ron@RonWeissAttorney.com

Co-Counsel for Plaintiff and the proposed class

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on

November 17, 2020, via the Court Clerk's CM/ECF system, which will provide notice to:

Brian Melendez | Partner
Barnes & Thornburg LLP
Suite 2800, 225 South Sixth Street,
Minneapolis, MN 55402-4662

Counsel for Defendant

*/s/ James L. Davidson*
James L. Davidson

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| DANA REEVES, on behalf of herself and others similarly situated, | : **Civil Action No.: 5:20-cv-11034-JEL-DRG** |
| | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| PATENAUDE & FELIX, A.P.C., | : |
| | : |
| Defendant. | : |
| | : |

---

**PLAINTIFF'S BRIEF IN SUPPORT OF HER UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

### Introduction

This is the third in a series of cases filed against Defendant related to its conduct in allegedly sending debt collection letters to consumers that demand payment in a time period within the Fair Debt Collection Practices Act's ("FDCPA") validation window—something the statute forbids. Defendant previously settled the other two cases, and both of those settlements have been finally approved. *See Acosta v. Patenaude & Felix, A.P.C.*, No. 3:19-cv-00954-CAB-BGS, ECF No. 45 (S.D. Cal. Sept. 10, 2020); *Voeks v. Patenaude & Felix, A.P.C.*, No. 16-cv-1309, ECF No. 43 (E.D. Wis. Oct. 5, 2020).[1]

---

[1]   The *Acosta* class consists of all consumers nationwide who were sent the debt collection letter at issue here between May 22, 2018 and May 22, 2019. The *Voeks* class consists of consumers in Wisconsin who were sent the debt collection letter at issue here between September 7, 2017 and September 7, 2018 and who were not already members of the *Acosta* class.

Following several months of settlement discussions, Plaintiff and Defendant have reached an agreement to resolve the current case on terms more favorable to class members than the previous settlements in *Acosta* and *Voeks*. Specifically, Defendant will create a settlement fund of $6,500—between approximately $59 and $232 per participating class member, assuming a typical claims rate—to be distributed pro-rata to each participating class member.[2] In addition, and separate from the settlement fund so as not to dilute class members' recoveries, Defendant also will pay: (1) all costs of class notice and settlement administration, which will include the mailing of notice to each class member; (2) full statutory damages of $1,000 to Plaintiff and an incentive award of $500, subject to court approval; and (3) class counsel's reasonable attorneys' fees, costs, and expenses in an amount to be awarded by the Court.

Defendant also will no longer use the form of debt collection letter at issue in this case going forward. This change will benefit any consumers who encounter Defendant's debt collection business in the future.

Considering the statutorily limited damages available to the class under the FDCPA, the risks of continued litigation, the nature of Defendant's conduct and Plaintiff's allegations, as well as the prospective relief afforded by the parties' agreement, and measured against the *Acosta* and *Voeks* settlements, the settlement here represents an excellent result for class members.

Accordingly, Plaintiff respectfully requests that this Court enter the accompanying order granting preliminary approval to the settlement and directing the notice program described herein. Defendant does not oppose the relief Plaintiff requests by this motion.

---

[2]     There are approximately 550 potential class members.

## Summary of the Settlement

**I.      The Settlement provides monetary compensation for each class member; in addition, Defendant has ceased using the form of debt collection letter at issue.**

The Agreement[3] defines a settlement class (the "Class") under Rule 23(b)(3) comprised of all persons (a) to whom Patenaude & Felix, A.P.C. mailed an initial debt collection communication to a Michigan address not known to be returned as undeliverable, (b) in connection with the collection of a consumer debt, (c) between May 23, 2019 and April 27, 2020, (d) which included a due date for a minimum payment amount that was within 30 days of the date of the initial debt collection communication. Defendant represents that there are approximately 550 class members, including Plaintiff.

Class members who elect to participate in the settlement will receive a pro-rata share of the $6,500 settlement fund. And given that claims rates in these types of consumer protection cases tend to be between approximately 5 percent and 20 percent, each participating class member is likely to receive between $59 and $232. To the extent any settlement checks go uncashed after the settlement administrator takes all reasonable steps to forward checks to any forwarding addresses, such funds will be redistributed to the Legal Services of South Central Michigan—the *cy pres* recipient selected by the parties. No settlement monies will revert to Defendant.

In addition, Defendant has agreed to cease using the form of debt collection letter at issue. Importantly, Plaintiff might not have obtained this relief had this case gone to trial. *See Midland*

---

[3]      A true and correct copy of the Agreement is attached as Exhibit 1 to the Declaration of James L. Davidson, filed contemporaneously herewith.

*Funding LLC v. Brent*, 644 F. Supp. 2d 961, 977 (N.D. Ohio 2009) ("This Court agrees that declaratory and injunctive relief are not appropriate under the FDCPA.").[4]

Finally, in addition to the foregoing, and separate and apart from the settlement fund, Defendant will pay $1,000 to Plaintiff as additional damages pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i), $500 as an incentive award for her service to the class, the costs of notice and administration, and an award of reasonable attorneys' fees and expenses.

## II.    The Agreement provides for direct mail notice to all class members.

The Agreement requires an ample notice program consisting of direct mail notice to each member of the class. Defendant has in its possession the names and recent addresses of each class member. The settlement administrator will take all reasonable steps necessary to ensure that each class member receives direct mail notice. Counsel for Plaintiff will also maintain relevant case documents on its website.

To that end, the parties have selected First Class, Inc., a third party, to act as the settlement administrator. First Class, Inc. is an experienced settlement administrator that has previously been approved to administer similar class action settlements. *See, e.g.*, *Veness v. Heywood, Cari & Anderson, S.C.*, No. 17-cv-338-bbc, 2017 WL 6759382, at *5 (W.D. Wis. Dec. 29, 2017); *Green v. Dressman Benzinger Lavelle, PSC*, No. 1:14-cv-00142-SJD, 2014 WL 4816698, at *2 (S.D. Ohio Sept. 18, 2014).

### This Court should preliminarily certify the settlement class

## I.    Claims under the FDCPA are well suited for class treatment.

To attain certification of the proposed class, Plaintiff must satisfy each of the four requirements of Fed. R. Civ. P. 23(a), referred to as numerosity, commonality, typicality, and

---

[4]    Unless otherwise indicated, all internal citations and quotations are omitted, and all emphasis is added.

4

adequacy of representation, as well as one of the requirements of Fed. R. Civ. P. 23(b).  Because Plaintiff seeks certification under Rule 23(b)(3), she must also demonstrate that common issues predominate, and that class treatment is the superior method to resolve this dispute. *See Passa v. City of Columbus*, 266 F.R.D. 197, 206 (S.D. Ohio 2010) (certifying FDCPA class).

Notably, "[t]he FDCPA expressly provides for class actions." *Selburg v. Virtuoso Sourcing Grp., LLC*, No. 1:11–cv–1458–RLY–MJD, 2012 WL 4514152, at *1 (S.D. Ind. Sept. 29, 2012); *see also* 15 U.S.C. § 1692k(a)(2)(B). "Lacking this procedural mechanism, meritorious FDCPA claims might go unredressed because the awards in an individual case might be too small to prosecute an individual action." *Weiss v. Regal Collections*, 385 F. 3d 337, 345 (3d Cir. 2004).

Moreover, class treatment of FDCPA claims is particularly appropriate because the FDCPA is a strict liability statute liberally construed in favor of the consumer. *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2007) ("Courts have characterized the FDCPA as a strict liability statute, meaning that a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages."). As the Ninth Circuit stated:

> [B]ecause the FDCPA is a remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors, it is logical for debt collectors—repeat players likely to be acquainted with the legal standards governing their industry—to bear the brunt of the risk.

*Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006).[5]

Accordingly, given their overwhelmingly common questions of fact and law, numerous

---

[5]       To that end, the Sixth Circuit uses the "least-sophisticated consumer" standard to evaluate whether a debt collector's communications violate the FDCPA. *Kistner v. Law Offices of Michael P. Margelefsky LLC*, 518 F.3d 433, 438-39 (6th Cir. 2008). This standard requires an objective analysis of whether a particular communication would deceive or mislead the least sophisticated debtor. *Fed. Home Loan Mortgage Corp.*, 503 F.3d at 509.

district courts in the Sixth Circuit have certified class actions, like here, based on form communications and standardized debt collection activity. *See, e.g.*, *McNamee v. Nationstar Mortg.*, No. 2:14-CV-1948, 2018 WL 1557244, at *8 (S.D. Ohio Mar. 30, 2018) (certifying FDCPA class action); *Macy v. GC Servs. Ltd. P'Ship*, 318 F.R.D. 335, 343 (W.D. Ky. 2017) (same); *Geary v. Green Tree Serv., LLC*, No. 2:14-CF-00522, 2017 WL 2608691, at *14 (S.D. Ohio June 16, 2017) (same); *Harbin v. Emergency Coverage Corp.*, No. 3:16-CV-125, 2017 WL 1397252, at *4 (E.D. Tenn. Mar. 23, 2017) (same); *Luther v. Convergent Outsourcing, Inc.*, No. 15-10902, 2016 WL 1698396, at *6 (E.D. Mich. Apr. 28, 2016) (Cohn, J.) (same); *Passa*, 266 F.R.D. at 206; *Mann v. Acclaim Fin. Serv., Inc.*, 232 F.R.D. 278, 286 (S.D. Ohio 2003); *accord Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620, 625 (6th Cir. 2005) (affirming order granting class certification). This Court should do the same.

## II. Plaintiff satisfies the requirements of Rule 23(a).

### A. Plaintiff's proposed class is so numerous that joinder of all members is impracticable.

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). As the Sixth Circuit has explained, "[t]here is no strict numerical test for determining impracticability of joinder." *In re Am. Medical Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Rather, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980). But while the numerosity requirement is not tied to any fixed numerical threshold, "substantial" numbers usually satisfy this requirement. *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (affirming certification of class numbering in the thousands).

Here, Defendant mailed initial debt collection letters to approximately 550 persons within Michigan during the proposed class period, each of which contained materially identical language

6

that Plaintiff contends violates the FDCPA. As a result, the proposed class is sufficiently numerous that joinder is impracticable. *See, e.g.*, *Passa*, 266 F.R.D. at 203 (numerosity satisfied based on uncontested allegations of hundreds or thousands of communications sent); *Luther*, 2016 WL 1698396, at *4 (approximately 6,800 class members satisfied numerosity).

> **B.    Questions of law and fact are common to the class Plaintiff seeks to represent.**

"The test for commonality is not demanding." *Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997), *cert. denied*, 522 U.S. 1052 (1998). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). "What matters to class certification . . . is not the raising of common questions—even in droves—but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of litigation." *Id.* at 350. "In cases where FDCPA plaintiffs have received similar debt collection letters from the defendants' mailing as the basis of the lawsuit, courts have found common questions of law or fact sufficient to certify the class." *D'Alauro v. GC Serv. Ltd. P'ship*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996).

Here, by definition, each putative class member received the same form of debt collection letter. Each class member, therefore, has the same claim against Defendant, and the commonality requirement accordingly is met. *See, e.g.*, *Macy*, 318 F.R.D. at 339 ("Receipt of similar dunning letters from the same debt collector has repeatedly been found to satisfy Rule 23's commonality requirement."); *Mann*, 232 F.R.D. at 284 ("The class proposed in this case consists of all consumers who received an initial communication from Acclaim stating, 'In addition, if this debt is not paid within 30 days of the receipt of this letter, this debt will be placed on your personal credit report records for 7 years (5 in New York).' While plaintiff has raised additional claims,

there remains at least one issue common to all members of the class, *i.e.*, whether this language violates the FDCPA and/or the OCSPA.").

### C.     Plaintiff's claims are typical of the claims of the class she seeks to represent.

The third requirement under Rule 23(a) is that the claims or defenses of the class representative must be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). A plaintiff's claim "is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Medical Sys., Inc.*, 75 F.3d at 1082; *In re Whirlpool Corp. Front–Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013) ("Typicality is met if the class members' claims are fairly encompassed by the named plaintiffs claims."). "The test for typicality, like commonality, is not demanding." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 415 (6th Cir. 1998).

Here, typicality is satisfied as Defendant sent debt collection letters with materially identical language to hundreds of persons in Michigan during the class period, all of whom have FDCPA claims identical to Plaintiff's based solely on the text of the debt collection letters they were sent. *See Macy*, 318 F.R.D. at 339-40 ("Here, the named plaintiffs and the proposed class members' claims arise from letters GC Services sent to all of them containing the same alleged deficiency. The claims asserted by Macy and Stowe are therefore typical of the claims of the class."). To be sure, there is no doubt that Plaintiff is a member of the proposed class and that her claims are typical of those of the other members of the class. *See* Dkt. No. 1-1 (demonstrating that Plaintiff is a member of the class in that she was sent the violative letter at issue during the class period). As a result, typicality is satisfied. *See Wess v. Storey*, No. 08-623, 2011 WL 1463609, at *8 (S.D. Ohio Apr. 14, 2011) ("Here, the representative party's claims are typical in that they have

been subjected to the same debt collection practices as the Class Members, and allege the same legal and remedial theories of relief based upon the FDCPA and CSPA for themselves as they assert for absent Class Members.").

> **D.   Plaintiff, and her counsel, will fairly and adequately protect the interests of the class.**

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has adopted a two-prong test for determining whether the adequacy-of-representation factor is met: "1) [T]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013).

Here, as set forth above, Plaintiff shares common interests with the members of the class by virtue of their receipt of the same standardized initial debt collection letter. And Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the class members' interests. Moreover, Plaintiff has diligently pursued this case with the goal of obtaining relief for the members of the class and forcing Defendant to change its practices moving forward, and she has accomplished that goal by way of this settlement. Furthermore, Plaintiff will continue to vigorously pursue class members' claims in this matter going forward.

In addition, Plaintiff has retained the services of counsel who are well-versed in class action litigation and who are committed to continuing to vigorously pursue this matter. *See* Ex. 1 at ¶ 8 (collecting cases). As such, Plaintiff and her counsel satisfy Rules 23(a)(4) and 23(g).

### III.    Plaintiff satisfies the requirements of Rule 23(b)(3).

In addition to meeting the four requirements of Rule 23(a), a party seeking class certification must demonstrate that the action is maintainable under one of the three subsections of

Rule 23(b). Pertinent here, Rule 23(b)(3) requires that questions of law or fact common to the class predominate over questions affecting the individual members and that, on balance, a class action is superior to other methods available for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

### A.    The questions of law and fact common to the class predominate over any questions affecting only individual class members.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). The objective of Rule 23(b)(3) is to promote economy and efficiency in actions that are primarily for money damages. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966).

Here, the central legal issue before this Court is whether Defendant's debt collection letters violated the FDCPA. As the Middle District of Alabama explained in certifying a class action based on an allegedly misleading form debt collection letter:

> In general, predominance is a test readily met in certain cases alleging consumer ... fraud. Here, not only will class-wide issues of proof predominate, but it is unlikely that there will be any issues of individualized proof. To determine whether the collection letters sent by American Recovery Systems violated the FDCPA, the court will not need to question whether each class member was deceived or misled by the privacy notice, because the least sophisticated consumer standard governs. Thus, the only individualized proof necessary will be whether each class member received a letter identical to [Plaintiff's]. Since that is a prerequisite for joining the class, the court finds that common questions of fact and law predominate in this case.

*Lewis v. ARS Nat'l Servs. Inc.*, No. 2:09cv1041–MHT, 2011 WL 3903092, at *5 (M.D. Ala. 2011).

Similarly, here, the predominant legal issue is whether Defendant's form collection letter violates the FDCPA. Courts have routinely found that common questions of law and fact predominate where class members' claims are based on standardized debt collection letters. *See, e.g.*, *Macy*, 318 F.R.D. at 340 ("The question of whether GC Services violated the FDCPA by failing to include the in-writing requirement in the letters it sent to class members is common to all members and predominates over any individual questions."); *Luther*, 2016 WL 1698396, at *5 ("Here, class wide liability involves discussion of whether the letter sent to Luther and the putative class members violates the FDCPA by seeking settlement of time-barred debt. This issue predominates over any individual issues."). This Court should do the same here.

**B.    A class action is superior to other available methods for the fair and efficient adjudication of this matter.**

To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). A class action is superior "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012). On a similar note, "[a] class action is superior where potential damages may be too insignificant to provide class members with incentive to pursue a claim individually." *Randolph v. Crown Asset Mgmt., LLC*, 254 F.R.D. 513, 520 (N.D. Ill. 2008).

Here, no one member of the class has an interest in controlling the prosecution of the action

11

because the claims of all members of the class are identical, as the allegations involve standardized conduct. *See Young*, 693 F.3d at 545 ("[C]ases alleging a single course of wrongful conduct are particularly well-suited to class certification."). Class members would have less litigation or settlement leverage and significantly reduced resources should they be required to individually litigate their claims. *Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 641 (D. Or. 2015).

Moreover, alternatives to a class action are either no recourse for more than 500 persons, or a multiplicity of suits resulting in the inefficient administration of the litigation. *See Luther*, 2016 WL 1698396, at *6 ("Here, where each individual class member's recovery would be small and the class size is large, combining identical claims into a single action is the superior and most efficient way to resolve the claims."). And absent a class action, many claims identical to those asserted by Plaintiff may go unaddressed. *See, e.g.*, *Schuchardt v. Law Office of Rory W. Clark*, No. 15-CV-01329-JSC, 2016 WL 232435, at *10 (N.D. Cal. Jan. 20, 2016) (noting that many class members would be unaware of their FDCPA claims).

For these reasons, and because the claims in this case arise from a form initial debt collection letter used by Defendant, a class action is the superior vehicle for determining the rights of absent class members. *See Geary*, 2017 WL 2608691, at *10 ("The Court finds that the class device is superior in this case. Plaintiffs are unlikely to be willing or able to front litigation costs and subject themselves to the financial exposure inherent in litigation for the typically low payout in these types of cases. Plaintiffs with unusual damages and a penchant to do so may choose to opt out of the class.").

### This Court should preliminarily approve the parties' settlement as fair, reasonable, and adequate under Rule 23(e).

Rule 23(e) requires that this Court make a preliminary determination of fairness for the class settlement presented:

Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *see also* 4 ALBA CONTE &

HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11.25 (4th ed. 2002).

Once the preliminary fairness evaluation has been made and notice has been issued, the

Court then holds a final fairness hearing to show that the proposed settlement is truly fair,

reasonable, and adequate. *See* MANUAL FOR COMPLEX LITIGATION § 21.633-34;

NEWBERG, § 11.25. That is, preliminary approval requires only that this Court evaluate whether

the proposed settlement was negotiated at arm's-length and is within the range of possible

litigation outcomes such that "probable cause" exists to disseminate notice and begin the formal

fairness process. *See* MANUAL FOR COMPLEX LITIGATION § 21.632-33.

While a full fairness determination is not necessary at this early juncture, the Sixth Circuit

has identified seven factors for analyzing the reasonableness and adequacy of a class action

settlement: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the

litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on

the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent

class members; and (7) the public interest. *Int'l Union, United Auto., Aerospace, & Agr. Implement*

*Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("UAW").[6] Rule 23(e)

---

[6]     The sixth factor—the reaction of absent class members—necessarily is unknown at this early stage because notice has not been disseminated.

13

itself requires the Court to consider several additional factors, including that the class representatives and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

Here, each relevant factor supports the conclusion that the settlement is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

### I.       There was no fraud or collusion behind the parties' settlement.

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011). Here, there is no fraud or collusion. Though the parties began engaging in settlement discussions soon after Defendant answered the Complaint, those negotiations continued for several months before the parties eventually reached an agreement.

And that agreement was reached only after Defendant provided Plaintiff with information concerning the size of the class and Defendant's net worth. The settlement thus is not a product of collusion but was the result of arm's-length settlement negotiations when each party had a view as to the strengths and weaknesses of its position. *See, e.g.*, *Claxton v. Alliance CAS, LLC*, No. 19-61002, 2020 WL 2759826, at *2 (S.D. Fla. May 27, 2020) ("The proposed settlement is fundamentally fair, reasonable, adequate, and in the best interest of the Class Members. The settlement was reached in the absence of collusion and is the product of informed, good-faith, arm's-length negotiations between the Parties and their capable and experienced counsel, having adequate knowledge of the strengths and weaknesses of their claims and the defenses and the risks of proceeding with the litigation through a motion for class certification, trial, and appeal.").

## II.     The complexity, expense, and duration of the litigation favors preliminary approval.

Turning to the second factor, it bears noting that "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003). Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011). The Sixth Circuit has recognized that complex litigation is "notoriously difficult and unpredictable." *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *see also Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (public interest in settling litigation is "particularly true in class action suits . . . which frequently present serious problems of management and expense").

Every class action—indeed, every case—involves some level of uncertainty, and this action was no different. Here, Defendant intended to assert that Plaintiff did not suffer a sufficient harm as a result of its debt collection conduct. *See* ECF No. 12 at 23. And had Plaintiff overcome this hurdle, she would have had to obtain certification of the class, and then summary judgment or a verdict at trial. Moreover, because damages under the FDCPA are not mandatory, there is no guarantee that Plaintiff would have recovered any money for the class even had she obtained judgment in favor of the class. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable."). Furthermore, Defendant represented that its business has been seriously

impacted by the Covid pandemic, and thus there was no guarantee that there would be money waiting for class members had this case persisted for months or even years.

Given these considerations, preliminary approval of the settlement is appropriate. *See Thornton v. State Farm Mut. Auto Ins. Co.*, No. 1:06-CV-00018, 2006 WL 3359482, at *3 (N.D. Ohio Nov. 17, 2006) ("As a number of courts have recognized, litigation is necessarily fraught with uncertainty, such that it is often advisable 'to take a bird in the hand instead of a prospective flock in the bush.'"); *accord Henderson v. Eaton*, No. 01-0138, 2002 WL 31415728, at *3 (E.D. La. Oct. 25, 2002) (following discovery, "several fundamental issues in the case remained in dispute: whether the defendant violated the FDCPA; whether the alleged violation was merely technical; and whether the alleged violation was willful and clear. Resolving these questions through a trial and, ostensibly, an appeal, would likely be burdensome and costly.").

### III. The parties have sufficiently developed the factual record through discovery to enable Plaintiff and her counsel to make a reasoned judgment concerning settlement.

Courts also consider the amount of discovery engaged in by the parties. *UAW*, 497 F.3d at 631. Here, because the question of whether Defendant violated the FDCPA is a legal question, resolution of the claims is relatively straightforward. *Accord Gregory v. McCabe, Weisberg & Conway, P.C.*, No. 13-6962, 2014 WL 2615534, at *9 (D.N.J. June 12, 2014) ("because this action is premised primarily upon a form collection notification letter . . . legal issues predominate the remaining disputes in this litigation").

The more complicated questions concerned viability of class certification absent settlement and establishing a class damages award within the confines of the statute, as described above. To that end, Defendant provided Plaintiff with information concerning the size of the class and Defendant's net worth—the sole determinant of the class's maximum statutory damages award in this action. *See* 15 U.S.C. § 1692k(a)(2)(B).

Moreover, Plaintiff's counsel is well-versed in FDCPA litigation, having litigated numerous FDCPA class actions nationwide. *See* Ex. 1, at ¶ 8. The settlement was therefore consummated when the parties had a good view towards the strengths and weaknesses of their respective positions, and an understanding of the maximum potential recovery for the class. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which "to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

### IV.    The probability of Plaintiff's success on the merits coupled with the range of possible recovery favor preliminary approval.

Next, "[t]he likelihood of success . . . provides a gauge from which the benefits of the settlement must be measured." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). "The fairness of each settlement turns in large part on the bona fides of the parties' legal dispute. Although this inquiry understandably does not require us to decide the merits of the case or resolve unsettled legal questions," this Court must nevertheless "weigh[] the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *UAW*, 497 F.3d at 631. In determining whether a settlement is fair in light of the potential range of recovery, this Court is guided by the important maxim that a proposed settlement may be only a fraction of the theoretical recovery, yet still fair and adequate in light of the attendant risks of litigation. *Thacker*, 695 F. Supp. 2d at 532.

As an initial matter, statutory damages for the class here were limited to a maximum of 1% of Defendant's net worth. *See* 15 U.S.C. § 1682k(A)(2)(B). Based on informal discovery into Defendant's net worth, the class's recovery here amounts to over 22% of the *maximum* total statutory damages this Court could have awarded had Plaintiff prevailed at trial and on any appeals.

*See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (confirming class settlement of "roughly one-sixth of the potential recovery"); *Altamirano v. Shaw Indus., Inc.*, No. 13-939, 2016 WL 1271046, at *4 (N.D. Cal. Mar. 31, 2016) (class settlement for approximately 14% of total damages at issue); *Stovall-Gusman v. Granger, Inc.*, No. 13-2540, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (net settlement amount represented 7.3% of the plaintiffs' potential recovery at trial).

Also noteworthy, the Covid pandemic struck while this case was pending, and Defendant has represented that its business has been severely negatively impacted as a result.

Moreover, there was no guarantee of full statutory damages at trial because the FDCPA's damages provision is permissive rather than mandatory. That is, the law provides for statutory damages awards *up to* certain amounts—$1,000 for Plaintiff, and the lesser of $500,000 or one percent of Defendant's net worth for the class—after balancing such factors as the nature of Defendant's noncompliance, the number of persons adversely affected, and the extent to which Defendant's noncompliance was intentional. *See* 15 U.S.C. § 1692k(b)(2). And the risk of a minimal damages award to the class here was not hypothetical. *See*, *e.g.*, *Dickens v. GC Servs. Ltd. P'ship*, 220 F. Supp. 3d 1312, 1326 (M.D. Fla. 2016) ("Applying the factors the Court must apply under Section 1692k of the FDCPA, the Court concludes in its discretion that the facts of this case call for the award of only nominal damages. The plaintiff or plaintiffs in this case, however many they may have been, would have been awarded $1.00 in statutory damages."), *vacated and remanded,* 706 F. App'x 529 (11th Cir. 2017); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* No. 1:06 CV 1397, 2011 WL 1434679, at *11 (N.D. Ohio 2011) (analyzing the factors set forth in 15 U.S.C. § 1692k, and awarding no "additional damages' to members of the class).

Finally, the recovery here compares favorably to those in the *Acosta* and *Voeks* classes. The *Accosta* settlement provided a settlement fund of $15,750 for 31,843 class members, for a per class member recovery of $0.49. *See Accosta,* No. 3:19-00954-CAB-BGS at ECF No 32. The *Voecks* settlement provided a maximum settlement fund of $4,750 for 535 class members, or $8.87 per class member. *See Voecks*, No. 16-cv-1309 at ECF No. 33-1. By contrast, here Defendant will create a settlement fund of $6,500 for a class of no more than 550 persons, or $11.81 per class member.

Given the foregoing, the immediate relief provided by the settlement is substantial, and represents an excellent recovery for the class. Indeed, the likely per participating class member recovery here of between $59 and $232—based on historical claims rates—compares extremely favorably to other similar FDCPA class settlements approved throughout the country. *See, e.g.*, *Macy v. GC Servs. Ltd. P'ship*, No. 3:15-cv-819-DJH-CHL, 2020 WL 3053469, at *3 (W.D. Ky. May 29, 2020) ($10 per class member); *Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 3:15-cv-418, 2016 WL 1273297, at *3 (S.D. Ohio Mar. 31, 2016) (same); *Whitford v. Weber & Olcese, P.L.C.*, No. 1:15-cv-400, 2016 WL 122393, at *2 (W.D. Mich. Jan. 11, 2016) (same); *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *3 (E.D. Pa. Sept. 13, 2016) ($10.92 per class member); *Hall v. Frederick J. Hanna & Assocs., P.C.*, 2016 WL 2865081, at *3 (N.D. Ga. May 10, 2016) ($10 per class member).[7]

---

[7]      *See also Donnelly v. EquityExperts.Org, LLC*, No. 4:13–CV–10017–TGB–RSW, 2015 WL 249522, at *3 (E.D. Mich. Jan. 14, 2015) (Berg, J.) ($50.00 plus a pro rata share of the remainder of the settlement fund based on actual damages incurred); *Green v. Dressman Benzinger Lavelle, PSC*, No. 1:14–CV–00142–SJD, 2015 WL 223764, at *3 (S.D .Ohio Jan. 16, 2015) (approximately $31 per class member); *Little-King v. Hayt Hayt & Landau*, No. 11-5621 (MAH), 2013 WL 4874349, at *14 (D.N.J. Sept. 10, 2013) ($7.87 per class member); *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) ($7.32 per class member).

What's more, Plaintiff also secured Defendant's confirmation that it has ceased using the form of debt collection letter at issue—a benefit that was not necessarily available at trial. *See, e.g.*, *Midland Funding LLC*, 644 F. Supp. 2d at 977. In sum, considering the benefits obtained here, in comparison to those likely at trial, and the risks to moving forward, this factor supports preliminary approval of the settlement.

## V.   The opinions of Plaintiff and her counsel strongly favor preliminary approval.

Both Plaintiff and her counsel firmly believe that the settlement here is fair, reasonable, and adequate, and in the best interests of class members. A strong initial presumption of fairness should attach to the proposed settlement because it was reached by well-qualified counsel engaged in arm's-length negotiations. Courts accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *See Thacker*, 695 F. Supp. 2d at 532 ("In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference."); *In re Skechers Toning Shoe Prod. Liab. Litig.*, No. 3:11-MD-2308-TBR, 2013 WL 2010702, at *6 (W.D. Ky. May 13, 2013) (same).

Here, Plaintiff's counsel is extremely experienced in class action litigation, particularly cases under the FDCPA. *See* Ex. A at ¶¶ 8-15. Correspondingly, the parties' and their counsel's strong support for this settlement firmly supports preliminary approval.

## VI.   The public interest favors preliminary approval.

In applying all of these aforementioned factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by the courts. *See, e.g.*, *UAW*, 497 F.3d at 632 (noting the "federal policy favoring settlement of class actions"); *Date v. Sony Elecs., Inc.*, No. 07-15474, 2013 WL 3945981, at *5 (E.D. Mich. July 31, 2013) (Borman, J.)

("Settlement of class action litigation is strongly favored in the law and as a matter of federal policy."), As the Southern District of Ohio wrote in approving an FDCPA class action settlement:

> The settlement also serves the public interest because it promotes compliance with the FDCPA, which Congress enacted in order to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(e)."

*Stinson v. Delta Mgmt. Assocs., Inc.*, 302 F.R.D. 160, 165 (S.D. Ohio 2014). The same is true here.

What's more, the public will be served well into the future by Defendant's agreed changes to its collection practices to address Plaintiff's claims.

## VII. The settlement treats class members equitably.

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018).

Here, each class member has the same claim resulting from receipt of the same form of debt collection letter from Defendant. And as a result, the settlement provides that each participating class member will receive an equal portion of the settlement fund. Plus, the release affects each class member in the same way as each class member is agreeing to release the same claims. As such, this factor supports preliminary approval. *See Hale v. State Farm Mutual Automobile Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The

21

proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund."). Moreover, class members will have the ability to exclude themselves from the settlement and pursue their claims individually. *See Charvat v. Valente*, No. 12:5746, 2019 WL 5576932, *6 (N.D. Ill. Oct. 28, 2019) ("Moreover, the ability to opt out of the settlement allows class members who received more than three calls to pursue the possibility of a greater award in an individual suit.").

### VIII.   This Court should approve the proposed notice to class members.

Under Rule 23(e), this Court must also "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." *See* Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). If class members can be identified and are given individual notice, there is no requirement for notice by publication or other means. *See In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, No. 06-02069 SBA, 2008 WL 1990806, at *2 (N.D. Cal. May 5, 2008) ("[N]otice by publication is only used when the identity and location of class members cannot be determined through reasonable efforts….").

Here, the parties have agreed to a notice program to be administered by a third-party settlement administrator that will use all reasonable efforts to provide direct mail notice to each member of the class. This notice plan complies with Rule 23 and due process because, among other things, it informs class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Class and claims asserted; (3) the binding effect of a judgment if the Class Member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that class

members may make an appearance through counsel; (5) information regarding Plaintiffs' request for statutory damages and reimbursement of their attorneys' fees and expenses; and (6) how to submit claims or make inquiries. Fed. R. Civ. P. 23(c)(2)(B); MANUAL FOR COMPLEX LITIGATION § 21.312.

In short, this notice plan ensures that class members' due process rights are amply protected, and, as a result, should be approved. *See* Fed. R. Civ. P. 23(c)(2)(A); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014) ("Under the circumstances of this case, when all class members are known in advance, the Court finds that the method of direct mail notice to each class member's last known address—and a second notice if the first was returned as undeliverable— was the best practicable notice.").

### IX.    This Court should schedule a final fairness hearing.

Finally, the last step in the settlement approval process is a final fairness hearing for this Court to hear all evidence and argument necessary to make its final settlement evaluation. *See* Fed. R. Civ. P. 23(e)(2). Proponents of the settlement may offer argument in support of final approval, and class members who have properly objected to the settlement may be heard at this hearing as well. The Court then will determine after the final fairness hearing whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e).

Plaintiff respectfully requests that this Court set a date for a final fairness hearing at the Court's convenience, approximately 120 days after the Court's preliminary approval of the settlement.

### Conclusion

Plaintiff respectfully requests that this Court enter the accompanying order granting preliminary approval to the parties' class action settlement. As noted, Defendant does not oppose the relief requested herein.

Dated: November 17, 2020

*/s/ James L. Davidson*
James L. Davidson
Greenwald Davidson Radbil PLLC
7601 N. Federal Highway, Suite A-230
Boca Raton, FL 33487
Tel: (561) 826-5477
jdavidson@gdrlawfirm.com

Counsel for Plaintiff and the proposed class

Ronald S. Weiss, Attorney & Counselor
7035 Orchard Lake Road, Suite 600
West Bloomfield, MI 48322
Phone: 248-737-8000 Fax: 248-737-8003
Ron@RonWeissAttorney.com

Co-Counsel for Plaintiff and the proposed class

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on November 17, 2020, via the Court Clerk's CM/ECF system, which will provide notice to:

Brian Melendez | Partner
Barnes & Thornburg LLP
Suite 2800, 225 South Sixth Street,
Minneapolis, MN 55402-4662

Counsel for Defendant

*/s/ James L. Davidson*
James L. Davidson